# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARGARITA CABRAL, et al., | Case No. 2:17-cv-02841-APG-VCF |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO CONSOLIDATE AS MOOT** |
| CAESARS ENTERTAINMENT CORPORATION, et al., | |
| Defendants. | (ECF Nos. 6, 22) |

The plaintiffs bring this proposed class action lawsuit against several resort hotels in Las Vegas. They allege the hotels charge overnight guests a mandatory per-night resort fee that includes payment for Internet access. The plaintiffs allege that the defendants applied the Clark County Combined Transient Lodging Tax to the entire amount of the resort fee, including that portion that covers Internet access. The plaintiffs assert this violates the Internet Tax Freedom Act (ITFA), a federal statute that precludes States and their political subdivisions from taxing Internet access.

The defendants move to dismiss for lack of jurisdiction, arguing the Tax Injunction Act (TIA) bars the plaintiffs' claims in federal court. Alternatively, the defendants request I dismiss the case based on principles of comity or abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The plaintiffs respond that the TIA does not apply because they are not challenging the Lodging Tax itself. Rather, they contend they are challenging the defendants' unilateral, non-mandatory decision to bundle Internet access charges with other services into a single resort fee and then applying the Lodging Tax to the total amount of the resort fee. Alternatively, the plaintiffs argue that Congress exempted ITFA suits from the TIA's scope. For similar reasons, the plaintiffs argue neither comity nor *Burford* abstention is appropriate. I grant the motion to dismiss for lack of jurisdiction under the TIA and based on comity principles.

# I. BACKGROUND

## A. The Lodging Tax

Clark County Code Chapter 4.08 sets forth the Lodging Tax, which is a tax on revenue derived from short-term room rentals for dwelling, lodging, or sleeping purposes, such as hotel rooms. The tax applies to "rent," which "[m]eans the amount charged for a sleeping room/space in a transient lodging establishment, valued in money, whether received in money or otherwise," including "[c]harges that would normally be part of an all inclusive room rate," such as late check-out fees, cancellation fees, and the like. Clark County Code 4.08.005(17)(a). The term rent also includes a catchall provision for "[a]ny charges for services, amenities, accommodations, or use, not otherwise specified above, that are mandatory in nature and charged in connection with rental of a sleeping/room space." *Id.* at 4.08.005(17)(a)(viii).[1]

The tax is collected from "every operator in Clark County." *Id.* at 4.08.010(a). An operator means "the proprietor of a transient lodging establishment." *Id.* at 4.08.005(12). "The tax, when due, constitutes a debt owed by the operator to the county which is extinguished only by payment thereof to the Clark County department of business license." *Id.* at 4.08.010(b). The operator may collect the tax "from the paying transient guests," but the "operator is liable to Clark County for the tax whether or not it is actually collected from the paying transient guest." *Id.* at 4.08.010(c). "Combined transient lodging taxes collected by the operator are public monies from the moment of their collection and shall be held in trust by the operator collecting such taxes for the use and benefit of the agencies for whom such revenues are collected." *Id.* at 4.08.055(b).

The operator owes the tax "on the first day of each month for the preceding month," and it is "payable to the Clark County Department of Business License." *Id.* at 4.08.055(a). However, the Code allows for a "discount" for operators in the amount of two percent of the Lodging Tax collected by the operator if the operator pays the Lodging Tax "on or before the fifteenth day of the month following the month for which the tax is due." *Id.* at 4.08.040.

---

[1] This is the provision under which the defendants have applied the Lodging Tax to the entire resort fee.

The operator must refund any "over-collection" of the Lodging Tax "to the occupant from whom it was incorrectly collected." *Id.* at 4.08.055(c). If the over-collection is not refunded to the occupant for any reason within a certain period of time, it must be remitted to the Clark County Department of Business License. *Id.* at 4.08.055(d).

The Code allows for refund requests. "Refunds of transient lodging tax collected by operators pursuant to Section 4.08.015 of this code must be requested from the department in writing" within two or three years, depending on the type of tax collected. *Id.* at 4.08.075(a), (b). "No transient lodging tax may be refunded to an operator who collected it unless the operator has refunded the transient lodging tax to the occupant who paid it." *Id.* at 4.08.075(c).

The Clark County Department of Business License has issued a General Information Guide for Transient Lodging Establishments to assist operators in complying with their obligations related to the Lodging Tax.[2] That Guide contains a chart listing "revenues that transient lodging establishments commonly collect from their guests," and identifies the different types of revenues as either (1) rent that is subject to the Lodging Tax or (2) non-rent or non-revenue that is not subject to the Lodging Tax. Guide at 6. The chart contains an entry for "Internet Access Fee (not mandatory with room rental)" and identifies it as non-rent that is not subject to the Lodging Tax. *Id.* at 7. The Guide notes that "[a]s a rule of thumb, any charges that are mandatory in nature and collected in connection with rental of a sleeping room/space/unit, will be considered rental revenue by the Department and therefore subject to the combined transient lodging tax." *Id.* at 6. The Guide states that "[f]ailure to segregate taxable rental revenue from exempt rental revenue . . . could result in the entire amount being subject to the combined transient lodging tax. Transient lodging operators are cautioned, therefore, against recording various types of rent in single G/L accounts without making a distinction between taxable and exempt revenue entries." *Id.* at 8 n.1.

/ / / /

---

[2] *See* http://www.clarkcountynv.gov/business-license/Pages/TransientLodgingGuidance.aspx.

## B. The Allegations

The defendants are resort hotels in Las Vegas that charge overnight guests a mandatory per-night resort fee that includes various services such as Internet access, local phone calls, and access to the fitness center. ECF No. 1 at 3. According to the complaint, the primary service of value included in the resort fee is the Internet access. *Id.* The defendants applied the Lodging Tax to the entire amount of the resort fee, even though the ITFA precludes state and local taxation of Internet access. *Id.* The plaintiffs were overnight guests at the resorts who were charged the Lodging Tax on the entire resort fee. *Id.* at 5-11.

The plaintiffs allege that the defendants previously did not bundle Internet access into a resort fee and did not apply the Lodging Tax to unbundled Internet access fees before they began imposing the mandatory resort fee in March 2013. *Id.* at 4, 22, 25. According to the complaint, the defendants do not apply the Lodging Tax to add-on Internet services, such as guests who pay additional Internet access fees for more devices or faster service. *Id.* at 40. The plaintiffs allege the defendants bundle Internet access into the mandatory resort fee so they can apply the Lodging Tax to the entire amount because the defendants receive two percent of the Lodging Tax funds they collect. *Id.* at 4.

Based on these allegations, the plaintiffs bring a class action complaint and assert claims for (1) violation of ITFA, (2) violation of Clark County Code § 4.08.005 for failing to refund over-collection of the Lodging Tax, (3) violation of the Nevada Deceptive Trade Practices Act, (4) breach of the covenant of good faith and fair dealing, (5) money had and received, (6) conversion, (7) unjust enrichment, and (8) declaratory judgment. The plaintiffs seek injunctive relief, declaratory relief, and damages.

## II. ANALYSIS

### A. TIA

The TIA provides that a federal district court "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The statute "was designed

1  expressly to restrict the jurisdiction of the district courts of the United States over suits relating to

2  the collection of State taxes." *Hibbs v. Winn*, 542 U.S. 88, 104 (2004) (quotation omitted).

3  Consequently, if the TIA applies, I must dismiss for lack of subject matter jurisdiction. *May*

4  *Trucking Co. v. Oregon Dep't of Transp.*, 388 F.3d 1261, 1275 (9th Cir. 2004).

5  <u>1. The Lodging Tax is a Tax under the TIA</u>

6  "Federal law determines whether an assessment qualifies as a 'tax' for purposes of the

7  TIA." *Wright v. Riveland*, 219 F.3d 905, 911 (9th Cir. 2000). To determine whether an

8  assessment is a tax, I consider: "(1) the entity that imposes the assessment; (2) the parties upon

9  whom the assessment is imposed; and (3) whether the assessment is expended for general public

10 purposes, or used for the regulation or benefit of the parties upon whom the assessment is

11 imposed." *Bidart Bros. v. Cal. Apple Comm'n*, 73 F.3d 925, 931 (9th Cir. 1996). As to the first

12 factor, an assessment imposed by a legislature "is more likely to be a tax than an assessment

13 imposed by an administrative agency," but the fact that it is imposed by "a non-legislative body is

14 not dispositive in determining that it is not a tax." *Id.* As to the second factor, an assessment

15 "imposed upon a broad class of parties is more likely to be a tax than an assessment imposed

16 upon a narrow class," but "an assessment upon a narrow class of parties can still be characterized

17 as a tax under the TIA." *Id.* Finally, assessments that are "general revenues and paid into the

18 state's general fund are taxes," whereas an assessment "placed in a special fund and used only for

19 special purposes is less likely to be a tax." *Id.* at 932. "However, even assessments that are

20 segregated from general revenues are 'taxes' under the TIA if expended to provide a general

21 benefit to the public." *Id.* (quotation omitted).

22 The Lodging Tax is a tax within the TIA's meaning. The tax is imposed through a Clark

23 County ordinance passed by the Clark County board of commissioners acting in a capacity

24 comparable to a legislature. *See* Nev. Rev. Stat., Ch. 244. The tax is imposed on only certain

25 types of businesses, and thus is narrow in that respect. But it is broad in that it applies to any

26 operator of a transient lodging establishment in the county. Most importantly, the funds are

27 public money from the moment of collection and the proceeds are used for general public

28

1  purposes such as school funding, transportation, and tourism. *See* Clark County Code 4.08.015

2  through 4.08.031 and statutes cited therein.

3       The plaintiffs argue the monies at issue in this case are not "taxes" but are actually "over-

4  collected" funds under the Clark County Code. ECF No. 25 at 8.  Putting aside the potentially

5  fatal consequences this argument would have for the merits of the plaintiffs' underlying claim,[3]

6  the plaintiffs are incorrect.  As the Ninth and Seventh Circuits have explained in addressing

7  similar arguments in relation to a federal tax on air travel, a plaintiff cannot characterize a tax as

8  improperly collected and thus not a tax at all.  Although this argument has "superficial appeal[,

9  . . .] it nevertheless misses the mark." *Brennan v. Sw. Airlines Co.*, 134 F.3d 1405, 1409 (9th

10  Cir.), *amended sub nom. Brennan v. Sw. Airlines*, 140 F.3d 849 (9th Cir. 1998); *see also Kaucky*

11  *v. Southwest Airlines Co.*, 109 F.3d 349 (7th Cir. 1997).

12       In both *Brennan* and *Kaucky*, the plaintiffs sued airlines based on the airlines' alleged

13  improper collection of a federal excise tax on air travel.  A section of the Internal Revenue Code

14  "required airline passengers to pay a ten percent excise tax on domestic air transportation

15  commenced prior to 1996." *Brennan*, 140 F.3d at 1408; *Kaucky*, 109 F.3d at 350.  The airlines

16  were required to collect the tax from their customers and remit the funds to the Internal Revenue

17  Service. *Brennan*, 140 F.3d at 1408; *Kaucky*, 109 F.3d at 350.  The defendant airlines imposed

18  the excise tax on flights purchased in 1995 for travel in 1996 because they anticipated the tax

19  would be renewed for 1996. *Brennan*, 140 F.3d at 1408; *Kaucky*, 109 F.3d at 352.  The excise tax

20  was not renewed for 1996 as expected, however, so the plaintiffs sued the airlines for return of the

21  imposed tax. *Brennan*, 140 F.3d at 1408; *Kaucky*, 109 F.3d at 350.  The airlines removed the

22  cases to federal court, arguing that the lawsuits were federal tax refund suits and thus arose under

23  federal law. *Brennan*, 140 F.3d at 1409; *Kaucky*, 109 F.3d at 350.

24

25

---

26      [3] If the plaintiffs are correct that the funds in dispute are not "taxes," then it is unclear how

27  the defendants have violated the ITFA, which suspends the collection of taxes on Internet services.  I need not (and do not) address this issue, however, because I dismiss for lack of subject

28  matter jurisdiction and based on comity concerns.

Both courts held the suits were properly removed because they were effectively federal tax refund suits. *Brennan*, 140 F.3d at 1409-10; *Kaucky*, 109 F.3d at 351. In doing so, the courts rejected the plaintiffs' argument that because the tax had expired and was wrongly imposed, it was not a tax at all.

*Brennan* relied primarily on the language of 26 U.S.C. § 7422[4] to reach this conclusion, but the court stated the "correctness of [its] holding becomes apparent when one considers the consequences of accepting Plaintiffs' argument instead." 140 F.3d at 1410. As that court explained:

> Accepting Plaintiffs' argument would permit a taxpayer to evade the strictures of § 7422 every time an IRS collection agent collected a tax without authority. This would render § 7422 virtually a dead letter because almost every citizen who seeks a tax refund alleges that the tax was collected without authority.

*Id.* (emphasis omitted). Thus, the court held that "based on the express language of § 7422 and the policy considerations that underlie it, . . . where a plaintiff sues to recover a sum that was collected as a tax, the plaintiff has sued for a tax refund, even if the sum does not literally constitute an internal revenue tax." *Id.* at 1412.

The Seventh Circuit reached a similar conclusion in *Kaucky*. *Id.* at 350, 352. That court stated that "[i]n a literal sense this is not a suit for a refund of taxes, because the plaintiff and the members of his class never paid the air transportation excise tax," as the tax was no longer in effect. *Id.* at 351. But the court stated it did "not think the literal sense is the right sense. If it were, then anytime a taxpayer thought he could prove that his employer had erroneously withheld a portion of his salary for federal income tax he would have an action in state court against the employer." *Id.*

Neither *Brennan* nor *Kaucky* addressed the scope of the TIA, but their reasoning supports rejecting the plaintiffs' position here. An over-collected tax is still a tax for purposes of the TIA.

---

[4] Section § 7422(a) described a tax refund suit as a "suit or proceeding . . . in any court for the recovery of any revenue tax alleged to have been erroneously or illegally assessed or collected, . . . or of any sum alleged to have been . . . in any manner wrongfully collected . . . ." *Brennan*, 140 F.3d at 1409 (quoting 26 U.S.C. § 7422(a) (emphasis omitted)).

Otherwise, the TIA would be eviscerated because, like the plaintiffs here, virtually every plaintiff challenging a state or local tax will claim it was wrongly assessed or collected and thus not a tax subject to the TIA's reach. That cannot be what Congress intended when it enacted the TIA.

Finally, the plaintiffs contend that the portion of the Lodging Tax the defendants retain as a discount for timely payment is not a tax. However, the Clark County Code provides that the taxes collected are public money from the moment of collection, and the operators are eligible for the discount only if they make timely payment. Thus, the portion the defendants may retain if they make timely payment is a tax, which Clark County has chosen to use as an incentive to procure prompt remittance of the balance of the tax.

### 2. This Suit Seeks to Enjoin, Restrain, or Suspend the Assessment, Levy, or Collection of the Lodging Tax

The TIA may apply to a claim regardless of whether the requested relief is for injunctive or declaratory relief, or for damages. *See California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982); *Dillon v. State of Montana*, 634 F.2d 463, 464-65 (9th Cir. 1980). The critical inquiry is whether the practical effect of those remedies would be to stop the collection of state or local taxes.[5] *Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124, 1133 (2015); *Winn v. Killian*, 307 F.3d 1011, 1017 (9th Cir. 2002). To make this determination, I consider whether the lawsuit, if successful, would reduce "the flow of state tax revenue." *May Trucking Co.*, 388 F.3d at 1267 (quotation omitted).

Each of the three types of relief requested by the plaintiffs would stop the collection of the Lodging Tax. An injunction against collecting the Lodging Tax on the resort fee (or a portion thereof) would obviously stop the collection of that tax. A declaration that the defendant could not apply the Lodging Tax to the entire resort fee would have the same result. Practically speaking, the plaintiffs' damages claim also would have the same effect. If successful, the defendants no doubt would cease collecting the tax in the future to avoid being sued again.

---

[5] A state tax under § 1341 "includes local taxation," such as Clark County's Lodging Tax. *Hibbs*, 542 U.S. at 100 n.1.

The plaintiffs contend their suit does not stop collection of the Lodging Tax because they do not challenge that tax or any state or local rule. Rather, they contend, they are challenging the defendants' unilateral decision to bundle the Internet access into the resort fee and to then apply the tax to the entire resort fee.

However, the Ninth Circuit ruled the TIA applied in a similar circumstance in *Fredrickson v. Starbucks Corporation*. There, three Starbucks baristas brought a class action challenging "the legality of Starbucks' practice of withholding state and federal taxes from baristas' paychecks based on the cash tips they receive." 840 F.3d 1119, 1120 (9th Cir. 2016). The baristas pooled their customers' tips and divided them up at the end of each week without reporting to Starbucks how much they each made in tips. *Id.* For tax withholding purposes, Starbucks "impute[d] 50 cents per hour in estimated tip income to each barista and [withheld] state and federal taxes from the baristas' paychecks based on that amount." *Id.* at 1121. The plaintiffs did not seek actual damages, but instead sought statutory damages, as well as declaratory and injunctive relief. *Id.*

The Ninth Circuit held the plaintiffs' claims for declaratory and injunctive relief were barred in federal court by the TIA because granting the declaratory and injunctive relief would stop collection of the taxes, as "Starbucks would no longer collect the state taxes in question and would no longer remit those funds to Oregon's treasury." *Id.* at 1122-23. The court held the claim for statutory damages was barred by the comity doctrine. *Id.* at 1124. In doing so, however, the court noted that "[a]ny award of statutory damages here would have the same disruptive effect as entry of a declaratory judgment or issuance of an injunction, thereby undermining the state-revenue-protective objectives of the Tax Injunction Act," because "Starbucks would of course cease [withholding taxes] to avoid future liability." *Id.* "The impermissible end result, as with declaratory or injunctive relief, would be to stop the flow of tax revenue into Oregon's coffers." *Id.*

There is no indication in *Fredrickson* that Starbucks was required by state or federal law to withhold taxes based on an imputed estimation of 50 cents per hour in tips. Rather, Starbucks unilaterally adopted this policy, much like the plaintiffs here allege the defendants unilaterally

adopted the mandatory resort fee policy and applied the Lodging Tax to the entire amount of that fee. *See Fredrickson v. Starbucks Corp.*, 980 F. Supp. 2d 1227, 1233 (D. Or. 2013) (stating the plaintiffs' suit "claims that Starbucks improperly withheld the taxes based on its policy of 'imputing' or 'estimating' tips, and seeks to recover the taxes withheld pursuant to that policy along with statutory penalties, interest, and attorney's fees" (emphasis omitted)); *Fredrickson v. Starbucks Corp.*, No. 03:13-CV-00029-HU, 2013 WL 12314742, at *11 (D. Or. Aug. 28, 2013) (stating that "Starbucks's estimation of employees' tip income was done pursuant to the company's understanding (whether mistaken or not—a question not decided here) of the Tax Code and applicable regulations . . ."). Indeed, in *Fredrickson*, the plaintiffs argued neither federal nor Oregon law authorized Starbucks' conduct, much less required it. *Fredrickson*, 840 F.3d at 1121-22. But the Ninth Circuit nevertheless concluded that the plaintiffs' lawsuit was barred in federal court by the TIA. Thus, as in *Fredrickson*, the fact that the plaintiffs are challenging the defendants' decisions to impose the mandatory resort fee and apply the Lodging Tax to the entire amount of that fee does not take their claims outside the TIA's scope.

Finally, the plaintiffs argue that their suit is consistent with Clark County's interpretation of the Lodging Tax, as Clark County identifies non-mandatory Internet access fees as non-taxable and has advised operators not to comingle taxable and non-taxable revenues in the same account. However, that involves disputes on the merits of whether the defendants are properly applying the Lodging Tax and whether their conduct violates the ITFA. Those are questions for the state court to resolve.

### 3. Plaintiffs Have a Plain, Speed, and Efficient State Law Remedy

The TIA bars federal jurisdiction only if there is a "plain, speedy and efficient remedy" in the state courts. 28 U.S.C. § 1341. This exception to the TIA requires "a state-court remedy that meets certain minimal *procedural* criteria." *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 512 (1981) (emphasis in original). That requirement generally is satisfied if the state court remedy provides a "full hearing and judicial determination at which [the plaintiff] may raise any and all

constitutional objections to the tax," and appeal through the state court system, with a final review in the Supreme Court of the United States. *Id.* at 514 (quotation omitted).

A state remedy is not plain "if there is uncertainty regarding its availability or effect." *Ashton v. Cory*, 780 F.2d 816, 819 (9th Cir. 1986); *see also Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 340 (1990) (stating "a remedy that is uncertain or speculative is not adequate to bar federal jurisdiction"). Whether a state remedy is speedy "is a relative concept, intended to be evaluated against the time normally required for similar litigation." *Ashton*, 780 F.2d at 821. The state remedy need not be "the most expeditious." *Id.* To be efficient, the state court remedy must not impose "unusual hardship" or require "ineffectual activity or unnecessary expenditure of time and energy." *Id.* Merely having to travel across state lines to challenge the tax does not make the state remedy inefficient. *Rosewell*, 450 U.S. at 517-18. Rather, there must be a showing that resort to the state remedy would, for example, "require a multiplicity of suits," or "would allow a challenge against only one of many taxing authorities." *Id.*

I must narrowly construe this exception to the TIA. *Grace Brethren Church*, 457 U.S. at 413. The party seeking to avoid the TIA's jurisdictional bar bears the burden of showing no plain, speedy, and efficient remedy exists in the state courts. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 20 n.21 (1983).

The defendants identify two potential state law remedies. First, the defendants suggest the plaintiffs could request a refund under the Clark County Code's refund procedures. Alternatively, the defendants argue the plaintiffs could bring these same claims in state court. The plaintiffs assert they could not bring a refund claim because under the Code, only operators, who are the taxpayers, may assert a refund claim. They also appear to assert their claims would be rejected in state court because they are not the taxpayers, the operators are.

I need not address whether a guest could request a refund under the Clark County Code because the plaintiffs have a plain, speedy, and efficient remedy in Nevada's state courts. The plaintiffs do not explain why they could not bring the exact same complaint against the

1    defendants in Nevada state court.  Nor do they assert that the Nevada courts could not or would

2    not hear and decide their federal claim.  The Nevada courts provide a forum for a full judicial

3    determination on the merits with appeal to the Supreme Court of Nevada, and review in the

4    Supreme Court of the United States.

5         That remedy is plain, particularly given that all but one of the plaintiffs' claims in the

6    complaint arise under Nevada state law.  Although the plaintiffs suggest Nevada may not allow

7    them to pursue their claims because they are not the taxpayer, they cite no law in support of that

8    argument except for an unpublished decision from another state.  The plaintiffs have not cited a

9    case in which the Nevada courts refused to hear a claim similar to the plaintiffs' claims.  They

10   thus "have not given [me] any convincing reason to doubt that the [Nevada] courts will entertain"

11   their claims, including the federal issue of whether the defendants' conduct violates the ITFA.

12   *Alcan Aluminium Ltd.*, 493 U.S. at 341 (quotation omitted).  The plaintiffs therefore have not met

13   their burden of showing there is no plain remedy in state court. *See id.*

14        There is no indication that litigation in the Nevada state courts is substantially more

15   protracted than in federal court, so that remedy is speedy.  Finally, the remedy is efficient.  The

16   plaintiffs could file the same lawsuit in state court that they have filed in this court.  Because the

17   Lodging Tax is collected by operators in Clark County, there is only one taxing authority at issue

18   and nothing about state law would require a multiplicity of suits.  There have been multiple suits

19   filed in this court raising the same issue but asserted against various resort hotels.  But that is not

20   because of some feature of the state court system that would render that remedy inefficient.  The

21   plaintiffs therefore have a plain, speedy, and efficient remedy in the Nevada state courts.

22        4.  Summary

23        The plaintiffs' suit is barred by the TIA because the plaintiffs' claims seek to restrain,

24   enjoin, or suspend the assessment, levy, or collection of a local tax, and the plaintiffs have a plain,

25   speedy, and efficient remedy in the Nevada state courts.  I therefore must dismiss this case for

26   lack of subject matter jurisdiction unless the ITFA is exempt from the TIA's reach.

27   / / / /

28

### 5.  ITFA is Not Exempted from TIA's Reach

Courts have found federal statutes are not exempt from the TIA's reach unless there is express language demonstrating Congress's intent to make an exception to the TIA. *See Blangeres v. Burlington N., Inc.*, 872 F.2d 327, 328 (9th Cir. 1989) (stating the court "will not carve out exceptions to the Tax Injunction Act unless Congress clearly expresses an intent to create an exception"); *Ashton*, 780 F.2d at 821-22 (declining to find that Employee Retirement Income Security Act was an implied exception to the TIA).  Congress has demonstrated it knows how to create an exception to the TIA when it wants that result. *See* 49 U.S.C. § 11501(c) ("*Notwithstanding section 1341 of title 28* . . . , a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section." (emphasis added)).

The plaintiffs contend that because Congress contemplated the effect a moratorium on taxing Internet access would have on state and local budgets when it enacted the ITFA, Congress intended ITFA to be an exception to the TIA.  But Congress did not expressly exempt ITFA from the TIA.[6]  The fact that Congress chose to exempt Internet access from state and local taxes does not mean it also intended that any challenges to a state or local tax under ITFA could be heard in federal court where a plain, speedy, and efficient remedy exists in the state courts.

Congress did not clearly exempt ITFA from the TIA.  I therefore dismiss the plaintiffs' complaint for lack of subject matter jurisdiction.

/ / / /

---

[6] The ITFA was enacted in 1998 on a temporary basis and set to expire after three years. Internet Tax Freedom Act § 1101(a), Pub. L. 105-277, div. C, tit. XI, 112 Stat. 2681-719 (1998). The ITFA was extended multiple times and then made permanent in 2016. Internet Tax Nondiscrimination Act, Pub. L. 107-75, § 2, 115 Stat. 703 (2001); Internet Tax Nondiscrimination Act, Pub. L. 108-435, 118 Stat. 2615 (2004); Internet Tax Freedom Act Amendments Act of 2007, Pub. L. 110-108, 121 Stat. 1024; Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. 113-235, div. E, tit. VI, § 624, 128 Stat. 2377 (2014); Consolidated Appropriations Act, 2016, Pub. L. 114-113, div. E, tit. VI, § 633, 129 Stat. 2471 (2015); Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. 114-125, tit. IX, § 922 (2016). *See also* 47 U.S.C. § 151, note.  None of these laws contains language exempting the ITFA from the TIA.

**B. Comity**

Even if I am incorrect about the TIA's application, I nevertheless would dismiss this case based on comity concerns. "The comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010). "The doctrine reflects a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." *Id.* (quotation omitted). The doctrine has "particular force" when a suit challenging a state tax is brought in federal court because "[i]t is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." *Id.* (quotation omitted). Thus, similar to the concerns that animate the TIA, comity dictates that federal court should be reluctant to adjudicate a suit that would stop the collection of state taxes where the challenging party's federal rights can be preserved through resort to a state remedy. *Id.*; *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 115-16 (1981).

For all of the reasons discussed with respect to the TIA, comity principles support declining to exercise jurisdiction in this case. Thus, even if the TIA did not bar the plaintiffs' claims in this court, comity and federalism concerns do. I therefore dismiss this case.

**III. CONCLUSION**

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **(ECF No. 22) is GRANTED**. This case is dismissed for lack of subject matter jurisdiction and based on comity principles.

/ / / /

/ / / /

/ / / /

/ / / /

1    IT IS FURTHER ORDERED that the motion to consolidate **(ECF No. 6) is DENIED as**

2 **moot**.

3    DATED this 11th day of June, 2018.

                            _____

                            ANDREW P. GORDON
                            UNITED STATES DISTRICT JUDGE